# EXHIBIT A

No. 5:13-cv-01797-SJO
# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

---

In re CITY OF SAN BERNARDINO, CALIFORNIA,
*Debtor.*

---

CITY OF SAN BERNARDINO, CALIFORNIA,

*Plaintiff-Appellee,*

vs.

STATE OF CALIFORNIA; JOHN CHIANG, in his official capacity as State
Controller of the State of California; OFFICE OF THE STATE
CONTROLLER OF CALIFORNIA; MICHAEL COHEN, in his official
capacity as the Director of the State of California Department of Finance;
CALIFORNIA DEPARTMENT OF FINANCE,

*Defendants-Appellants.*

---

Appeal from the United States Bankruptcy Court for the Central District of
California, Hon. Meredith A. Jury, Case No. 6:13-ap-01127-MJ

---

## BRIEF OF *AMICUS CURIAE* CALPERS IN SUPPORT OF
## APPELLANTS AND REVERSAL

---

K&L GATES LLP
Michael J. Gearin (admitted *pro hac vice*)
Michael B. Lubic (SBN 122591)
Michael K. Ryan (admitted *pro hac vice*)
10100 Santa Monica Boulevard, 7th Floor
Los Angeles, California 90067
Telephone: (310) 552-5000 | Facsimile: (310) 552-5001
Email: michael.gearin@klgates.com; michael.lubic@klgates.com;
michael.ryan@klgates.com

Attorneys for California Public Employees' Retirement System

## **TABLE OF CONTENTS**

INTERESTS OF *AMICUS CURIAE* CALPERS ................................................ 1

ARGUMENT ................................................................................................ 1

I.      *Katz's* Limited Holding Does Not Apply in Chapter 9. ......................... 4

        A.      Chapter 9 Cases are Different. ....................................................... 5

        B.      Historical Practice Key to Sovereign Immunity Holding. ........... 9

II.     Federalism Concerns Cannot Be Ignored. ............................................. 13

CONCLUSION ........................................................................................... 15

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.H. Robbins Co. v. Piccinin,*
   788 F.2d 994 (4th Cir. 1986) ..................................................................... 11

*Alden v. Maine,*
   527 U.S. 706 (1999) .............................................................................. 8, 13

*Arizona v. United States,*
   132 S. Ct. 2492 (2012) ............................................................................. 13

*Ashton v. Cameron Cnty. Water Improvement Dist. No. 1,*
   298 U.S. 513 (1936) ................................................................................. 10

*Bond v. United States,*
   131 S. Ct. 2355 (2011) ............................................................................. 14

*Cal. Redevelopment Assoc. v. Matosantos,*
   267 P.3d 580 (Cal. 2011) ........................................................................... 2

*Celotex Corp. v. Edwards,*
   514 U.S. 300 (1995) ................................................................................... 6

*Central Virginia Community College v. Katz,*
   546 U.S. 356 (2007) ......................................................................... passim

*Hans v. Louisiana,*
   134 U.S. 1 (1890) ..................................................................................... 13

*Hunter v. City of Pittsburgh,*
   207 U.S. 161, 178 (1907) ........................................................................... 2

*In re City of Colorado Springs Spring Creek Gen. Improvement Dist.,*
   177 B.R. 684 (Bankr. D. Colo. 1995) ......................................................... 1

*In re City of Harrisburg,*
   465 B.R. 744 (Bankr. M.D. Pa. 2011) ....................................................... 1

*In re Cnty. of Orange,*
   179 B.R. 177 (Bankr. C.D. Cal. 1995) ....................................................... 3

*In re DBSI, Inc.,*
   463 B.R. 709 (Bankr. D. Del. 2012) ........................................................... 9

*In re Jefferson Cnty., Ala.,*
   484 B.R. 427 (Bankr. N.D. Ala. 2012) ....................................................... 6

*In re Stockton, Cal.,*
   486 B.R. 194 (Bankr. E.D. Cal. 2013) ........................................................ 6

*In re VistaCare Group, LLC,*
   678 F.3d 218 (3d Cir. 2012) ..................................................................... 11

*MedImmune, Inc. v. Genetech, Inc.,*
   549 U.S. 118 (2007) ................................................................................. 11

i

*New York v. United States,*
   505 U.S. 144 (1992) ................................................................. 14
*Sossamon v. Texas,*
   131 S. Ct. 1651 (2011) ............................................................ 15
*Tenn. Student Assistance Corp. v. Hood,*
   541 U.S. 440 (2004) ............................................................ 7, 8
*United States v. Bekins,*
   304 U.S. 27 (1938) .......................................................... 10, 15
*United States v. Johnson,*
   14 F.3d 476 (4th Cir. 1997) ................................................... 14
*United States v. Mussari,*
   95 F.3d 787 (9th Cir. 1996) ................................................... 14

**Statutes**
11 U.S.C. § 105 ....................................................................... 11
11 U.S.C. § 541 ........................................................................ 6
11 U.S.C. § 542 ........................................................................ 6
11 U.S.C. § 543 ........................................................................ 6
11 U.S.C. § 83(i) ....................................................................... 2
11 U.S.C. § 901 ........................................................................ 6
11 U.S.C. § 903 ..................................................................... 2, 3
11 U.S.C. § 904 ..................................................................... 6, 7
28 U.S.C. § 1334(e) ................................................................... 6

**Other Authorities**
*Collier on Bankruptcy,*
   § 362.LH[1] at 148 (16th Ed.) ............................................... 11
H.R. Rep. No. 94-686, at 19 (1975),
   *reprinted in* 1976 U.S.C.C.A.N. 539, 557 (1976) ......................... 2
H.R. Rep. No. 95-598, at 262-64 (1978),
   *reprinted in* 1978 U.S.C.C.A.N. 4717, 6220-22 (1978) ................. 3
Redish & Greenfield,
   *Bankruptcy, Sovereign Immunity and the Dilemma of Principled Decision*
   *Making: The Curious Case of Central Virginia Community College v. Katz,*
   15 Am. Bankr.Inst. L. Rev. 13 (2007) ...................................... 4
*State Sovereignty After Katz,*
   15 Am. Bankr.Inst. L.Rev. 59, 60 (2007) ................................. 4
*State Sovereignty, State Bankruptcy, and a Reconsideration of Chapter 9,* 3
   Am. Bankr. L.J. 363, 367 (2011) ........................................... 10
*The Historical Evolution of the Bankruptcy Discharge,*
   65 Am. Bankr. L.J. 325, 347 (1991) ....................................... 12

Exhibit A Page 4

*The History of Bankruptcy Laws in the United States*,
  3 Am. Bankr.Inst. L.Rev. 5, 7-8 (1995)........................................................ 12

iii

## INTERESTS OF *AMICUS CURIAE* CALPERS

The California Public Employees' Retirement System ("CalPERS"), like its sister State agencies involved in this appeal, performs essential governmental functions for California.  The issues of sovereignty arising in this appeal are important to CalPERS and its 1.7 million members because this is the first time that a court has determined that a state agency is subject to suit against its will in federal court in a chapter 9 proceeding.  Therefore, CalPERS' Board has authorized the filing of this brief *amicus curiae*.[1]

## ARGUMENT

Chapter 9 cases are different.  "Unlike any other chapter of the Bankruptcy Code, Chapter 9 places federal law in juxtaposition to the rights of states to create and govern their own subdivisions." *In re City of Colorado Springs Spring Creek Gen. Improvement Dist.*, 177 B.R. 684, 693 (Bankr. D. Colo. 1995); *In re City of Harrisburg*, 465 B.R. 744, 753 (Bankr. M.D. Pa. 2011).  Municipal bankruptcy raises constitutional issues when the State is involved because the relationship between a municipality and a State is categorically different than that between a municipality and any other party.

---

[1] The undersigned counsel certifies that no other party's counsel authored this brief in whole or in part or contributed money intended to fund this brief, and no other person contributed money that was intended to fund the preparing or submitting of this brief.  *See* Fed. R. App. P. 29(c)(5)(A)-(C).

Exhibit A Page 6

Cities, like San Bernardino, are creatures of State law whose powers and authority derive ***only*** from State law.  As against the State, cities enjoy no federal constitutional protection.  *See, e.g., Hunter v. City of Pittsburgh*, 207 U.S. 161, 178 (1907) ("The number, nature, and duration of the powers conferred upon these corporations . . . rests in the absolute discretion of the state."); *Cal. Redevelopment Assoc. v. Matosantos*, 267 P.3d 580, 597 (Cal. 2011) (municipalities "exist only at the state's sufferance.").  The legal obligations between a private creditor and a municipal debtor are radically different than the obligations between that same debtor and the State during a chapter 9 proceeding.  While private creditors protect private rights, the State protects public interests by making sure its laws are not flouted.  Congress made clear in enacting section 903[2] of the Bankruptcy Code that:

> Any State law that governs municipalities or regulates the way in which they may conduct their affairs controls in all cases. Likewise, any State agency that has been given control over any of the affairs of a municipality will continue to control the municipality in the same way, in spite of a Chapter IX petition.

H.R. Rep. No. 94-686, at 19 (1975), *reprinted in* 1976 U.S.C.C.A.N. 539, 557 (1976) (discussing prior history of § 83(i), § 903's precursor)) (*see* ER 279);

*see also* H.R. Rep. No. 95-598, at 262-64 (1978), *reprinted in* 1978

---

[2] Section 903 provides: "This chapter does not limit or impair the power of the State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political and governmental powers of such municipality, including expenditures for such exercise . . ."

U.S.C.C.A.N. 4717, 6220-22 (1978) (*see* ER 281-83) (noting importance of "the concept of non-interference by the Federal Government with State governmental powers.").[3]  The dispute between the City and the State of California puts this difference into sharp relief.

The bankruptcy court relied on *Central Virginia Community College v. Katz*, 546 U.S. 356 (2007), to determine that the State was not immune from suit.  *Katz's* limited exception to sovereign immunity does not apply.  A world of difference exists between a chapter 11 adversary proceeding brought by a private party seeking to set aside preferential transfers to a State (*Katz*), and the instant suit filed by a creature of the State on behalf of a separate and distinct legal entity (the RDA's successor agency) seeking to require its master to turnover tax revenues that have never been in the possession of that separate entity.  The bankruptcy court failed to acknowledge this distinction, instead labeling the State's refusal to turnover tax revenues to a non-party

---

[3] While the State Agencies do not maintain that § 903 provides an immunity from suit and thus this Court need not address its meaning or application, § 903 is an important background principle that must be kept in mind in every chapter 9 case. *In re Cnty. of Orange*, 179 B.R. 177, 183 (Bankr. C.D. Cal. 1995) ("The history of chapter 9 reflects concern on the part of Congress not to overstep the boundary between legislation necessary for municipalities to reorganize and the rights of states to control the functions of their municipalities. . . . Section 903 is a specific directive to proceed cautiously when approaching this line."). While some courts have read section 903 in a manner that effectively writes it out of the Bankruptcy Code, the bankruptcy court below specifically rejected such an interpretation as both "dicta" and "wrong." ER 41 (discussing rulings issued in Vallejo bankruptcy).

debtor as a mere collection action.  ER 40.  For chapter 9 to function as Congress intended, this Court must conclude that the State Agencies are immune from suit.  If not, the specter of allowing a creature of the State to sue its master on issues of State law in federal bankruptcy court may become commonplace.

## I.     *Katz's* Limited Holding Does Not Apply in Chapter 9.

In *Katz*, the Court, 5-4, broke with precedent and held that the States, at the time the Constitution was ratified, consented to a limited waiver of sovereign immunity in proceedings "necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." *Id.* at 378.[4]  This Court is bound by Katz, *if* it applies.  *Katz,* however, does not apply because (1) chapter 9 cases are different; and (2) the States ratifying the Constitution could not have envisioned that they could be haled into federal court by any private party, let alone a political subdivision owing its entire existence to the State.

---

[4] Even within its narrow holding, *Katz* was wrongly decided.  Notably, all four dissenting Justices currently remain on the Court and  one leading commentator has noted that *Katz* may be ripe for re-examination by the current Court. *See* E. Chemerinsky, *Federal Jurisdiction*, at 442, n.26 (6th ed. 2012); *accord* Plank, *State Sovereignty After Katz*, 15 Am. Bankr.Inst. L.Rev. 59, 60 (2007); Redish & Greenfield, *Bankruptcy, Sovereign Immunity and the Dilemma of Principled Decision Making: The Curious Case of Central Virginia Community College v. Katz*, 15 Am. Bankr.Inst. L. Rev. 13 (2007).

4

## A.    Chapter 9 Cases are Different.

*Katz* was a chapter 11 case, not a chapter 9 case.  The court below failed to recognize that a chapter 9 case presents issues unlike any other bankruptcy proceeding.

*First*, the *Katz* Court was not faced with having to examine the relationship between the debtor and the alleged creditor.  The relationship between the City and the State Agencies is entirely different from the relationship between the debtor and the State in *Katz*.  In *Katz*, the debtor operated book stores at state schools and the State institution "did business with" the underlying debtor before the debtor filed its chapter 11 petition. 546 U.S. at 360.  Based on this "business," the trustee sued to "avoid and recover alleged preferential transfers to" the State institutions that were "made by the debtor when it was insolvent."  *Id.*  Thus, it made some sense to treat the State institutions in *Katz* as mere creditors given that their relationship with the debtor was part of ordinary commercial business affairs. By contrast, the State Agencies sued in this case have not done any "business" with the City or its Successor Agency; rather, they are simply seeking to enforce the plain terms of State law governing the dissolution of redevelopment agencies and the administration of the State's tax system.

5

*Second*, courts in chapter 9 cases do not exercise *in rem* jurisdiction over the debtor's *res* as they do in chapter 7 or 11 cases. The Supreme Court has acknowledged that the "jurisdiction of bankruptcy courts may extend more broadly" depending on which chapter of the Code is being applied. *Celotex Corp. v. Edwards*, 514 U.S. 300, 310 (1995). Chapter 9 is a perfect example. In § 904 Congress expressly carved out an exception to 28 U.S.C. § 1334(e)'s "exclusive jurisdiction" over property of a debtor by severely curtailing a court's jurisdiction over the property of a chapter 9 debtor. *In re Stockton, Cal.*, 486 B.R. 194, 198-99 (Bankr. E.D. Cal. 2013). Unlike other chapters, there is no chapter 9 "estate"; thus, a court does not control the debtor's *res* as it does under other chapters. *In re Jefferson Cnty., Ala.*, 484 B.R. 427, 462-63 (Bankr. N.D. Ala. 2012) ("A Chapter 9 debtor . . . retains not just full title over its property, it also keeps the same degree of control over it in a bankruptcy case[.]") (citing § 904).[5]

The mischief that would result from subjecting the State Agencies to suit in chapter 9 cases is illustrated by what would happen if the City obtained the relief it sought. Once the City, using the court's authority, secures the tax revenues, the court's purported *in rem* jurisdiction vanishes. Under § 904, a

---

[5] Congress chose not to apply § 541 in chapter 9. Section 541 creates a bankruptcy estate in chapters other than chapter 9. Congress also chose not to apply §§ 542-43's turnover provisions, which address recovery of property of the bankruptcy estate. *See* § 901.

court may not, without the City's consent, "interfere with . . . any of the property or revenues of the debtor." Thus the City could toggle the court's authority over the property on or off like a light switch. This is not possible under other chapters of the Bankruptcy Code, where the court supervises the whole estate of the debtor during the entire pendency of the case. *In rem* jurisdiction does not exist at the whim of a debtor.

*Katz* did not address the complexities of municipal bankruptcies. "Critical features of every bankruptcy proceeding are the exercise of exclusive jurisdiction over all of the debtor's property." *Katz* at 363-64. This is obviously not so in chapter 9, because of § 904. "Bankruptcy jurisdiction . . . is principally *in rem* jurisdiction." *Katz* at 369. But "principally" does not mean entirely, chapter 9 being an exception. "In bankruptcy, 'the court's jurisdiction is premised on the debtor and his estate, and not on the creditors.' As such, its exercise does not, in the usual case, interfere with state sovereignty even when States' interests are affected." *Katz* at 370 (quoting *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447-48 (2004)). But there is no estate in chapter 9 and these statements are incongruous with chapter 9. Rather, they underscore why the Court's focus on *in rem* jurisdiction in a chapter 11 case was a key to its holding.

The existence of a clear *in rem* basis for jurisdiction is of major import in sovereign immunity analysis. *Hood*, 541 U.S. at 448-49 (2004) ("At least when the bankruptcy court's jurisdiction over the *res* is unquestioned, our cases indicate that the exercise of its *in rem* jurisdiction to discharge a debt does not infringe state sovereignty."). Whether there is an entitlement by the debtor to the funds at issue is central to this dispute. Absent a clear entitlement, it cannot be said that the court's "jurisdiction over the *res* is unquestioned," *id.*, nor can it be said that the proceeding below was "necessary to effectuate the *in rem* jurisdiction" of the court. *Katz* at 378. Here, the bankruptcy court did not even apply this test; rather it simply determined that *Katz* applied because the *res* "might be affected." ER 42. That is not the test under *Katz*, nor should it be. Indeed, the City has never claimed that it has the ability to access or use any of the Successor Agency's funds. Thus, there is no *res* over which the court could exercise *in rem* jurisdiction. Whatever the "property of the debtor" means in a chapter 9 case, it is clear that the taxes the State Agencies contemplate withholding from the Successor Agency are not part of it because that agency is not in bankruptcy.

Immunity is an essential attribute of State sovereignty. *Alden v. Maine*, 527 U.S. 706, 713 (1999). It should not be discarded because under some possible set of facts a municipal debtor's interests "might be affected." Not

Exhibit A Page 13

only is such a ruling inconsistent with *Katz* and *Hood*, it runs counter to Supreme Court precedent and historical roots of immunity. *Alden* at 715-727.

### B.    Historical Practice Key to Sovereign Immunity Holding.

A crucial underpinning of *Katz* is absent here.  The *Katz* majority premised its decision on the fact that the avoidance and recovery of preferential transfers "has been a ***core aspect of the administration of the bankruptcy estate since at least the 18th century***."  *Id.* at 372 (citations omitted) (emphasis added) (citing cases ***preceding*** the ratification of the Constitution).  On this historical basis, the majority reasoned that "those who crafted the Bankruptcy Clause would have understood it to give the power to authorize courts to avoid preferential transfers and to recover the transferred property."  *Id.*  In other words, because the ratifying States would have been familiar with such suits, they implicitly conceded an aspect of their immunity from suit at the time of ratification.  Thus, assessing the history of the powers that a court is being asked to exercise is critical under *Katz*.  *See, e.g.*, *In re DBSI, Inc.*, 463 B.R. 709, 715 (Bankr. D. Del. 2012) ("Following *Katz*, I look to prior cases and history to determine that fraudulent transfer suits were in fact entertained 'since at least the [eighteenth] century.'").

Had the bankruptcy court undertook an historical analysis, it would have been compelled to find the State Agencies immune from suit.  The

9

concept of public bankruptcies did not exist until long after the Constitution was ratified.  It was not until 1934, almost 150 years after the Constitution was ratified, that Congress passed the first municipal bankruptcy law.  It was struck down by the United States Supreme Court because the very concept of a purely federally authorized municipal bankruptcy was anathema to State sovereignty given the relationship that exists between a State and its subdivisions.  *Ashton v. Cameron Cnty. Water Improvement Dist. No. 1*, 298 U.S. 513, 527-28 (1936).  Two years later, the Court upheld a revised law that was "carefully drawn so as not to impinge upon the sovereignty of the State [and because the] State retains ***control of its fiscal affairs***."  *United States v. Bekins*, 304 U.S. 27, 49 (1938) (emphasis added).  Part of the City's requested relief—a mandatory injunction requiring the State Agencies to pay money to a non-debtor—does violence to the State's "fiscal affairs" and therefore "impinge[s] upon the sovereignty of the State."  Evidence from the time shows that the "Framers would have been astonished at any suggestion that the Bankruptcy Clause gave Congress the power to restructure the debts of a sovereign state."  Mayer, *State Sovereignty, State Bankruptcy, and a Reconsideration of Chapter 9*, 3 Am. Bankr. L.J. 363, 367 (2011) (citing The Federalist No. 81).[6]

---

[6] The same is true for the declaratory sought by the City.  *MedImmune, Inc. v.*

Likewise, while the automatic stay and its self-executing injunction is accepted *today*, the concept of the automatic stay—let alone its attempted use by a creature of a State against its creator—was not a "core aspect" of bankruptcy law or administration at the time of the framing.  In fact, the self-executing automatic stay did not truly exist until 1978, 200 years after ratification.  *In re VistaCare Group, LLC*, 678 F.3d 218, 230-31 (3d Cir. 2012) (history of automatic stay); *see also Collier on Bankruptcy*, § 362.LH[1] at 148 (16th Ed.) (genesis of automatic stay injunction) & *id.* at § 362.LH[2] at 151-55.  Similarly, the injunctive powers of the bankruptcy courts under § 105, which is the *only* method by which the court could seek to require the State Agencies to pay revenues to the Successor Agency, *see* ER 38, 46 & 49, came about as a result of the "expanded jurisdiction" created by the Bankruptcy Reform Act of 1978.  *A.H. Robbins Co. v. Piccinin*, 788 F.2d 994, 1003 (4th Cir. 1986).  Thus, neither the automatic stay, nor a § 105 injunction, were "core aspects" of the administration of bankruptcy cases at the time the Constitution was ratified.

Not only did those aspects of estate administration not exist, early English bankruptcy laws--the laws the Framers and the ratifying States would have been familiar with-- "viewed debtors as quasi-criminals" and such laws

---

*Genetech, Inc.*, 549 U.S. 118, 126-27 (2007) (discussing history of DJA).

Exhibit A Page 16

only could be invoked by creditors.  Tabb, *The History of Bankruptcy Laws in the United States*, 3 Am. Bankr.Inst. L.Rev. 5, 7-8 (1995).  Under these laws, "[r]elief was not *for* debtors, but *from* debtors."  *Id.* at 8 (emphasis in original).  Indeed, Congress' first bankruptcy law—the Bankruptcy Act of 1800—was modeled after early English bankruptcy laws and created "purely a creditor's remedy" and only certain parties could be debtors.  *Id.* at 14.  At the time of the framing, protecting the debtor by enjoining potential creditors in order to aid a debtor's "fresh start" was unheard of.  *Id.* at 43.  Moreover, and important here, the 1800 Act specifically prohibited the impairment of debts owed to the States.  *See* Tabb, *The Historical Evolution of the Bankruptcy Discharge*, 65 Am. Bankr. L.J. 325, 347 (1991).  Thus, it cannot be claimed that the ratifying States' purported concession of certain aspects of their sovereign immunity envisioned any action like the one here.

There is no historical evidence showing that those who crafted the Bankruptcy Clause would have understood it to authorize any court to hale an unwilling State into adversary litigation in federal court so that one of its creatures could seek an injunction requiring payment of tax revenues controlled by that State to a non-debtor party.  Unlike the preference action in *Katz*, the suit brought by the City was unheard at the time of ratification.

12

Exhibit A Page 17

Given the lack of any established pattern of the existence of similar suits at the time of ratification, the States are presumed to retain their sovereign immunity. *Hans v. Louisiana*, 134 U.S. 1, 18 (1890) (noting "presumption that no anomalous and unheard-of proceedings or suits were intended to be raised up by the constitution--anomalous and unheard-of when the constitution was adopted."); *Alden*, 527 U.S. at 727. This lack of historical practice is fatal to the court's application of *Katz*.

## II.    Federalism Concerns Cannot Be Ignored.

"Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect." *Arizona v. United States*, 132 S. Ct. 2492, 2500 (2012) (citations omitted). By characterizing this proceeding as merely one to prevent an action to collect on a debt, the bankruptcy court gave short shrift to the serious federalism concerns this proceeding raises. Undoubtedly, California's laws addressing the dissolution of redevelopment agencies and the allocation of tax revenues, like the administration of California's pension system, are core sovereign interests.

The Tenth Amendment, and the residual sovereignty it embodies, imposes limits on the implementation of Congress's Article I powers:

> Congress exercises its conferred powers subject to the limitations contained in the Constitution. Thus, for example, under the

Commerce Clause Congress may regulate publishers engaged in interstate commerce, but Congress is constrained in the exercise of that power by the First Amendment. ***The Tenth Amendment likewise restrains the power of Congress, but this limit is not derived from the text of the Tenth Amendment itself, which, as we have discussed is essentially a tautology.*** Instead, the Tenth Amendment confirms that the power of the Federal Government is subject to limits that may, in ***a given instance***, reserve power to the States. ***The Tenth Amendment thus directs us to determine, as in this case, whether an incident of state sovereignty is protected by a limitation on an Article I power.***

*New York v. United States*, 505 U.S. 144, 156-57 (1992) (emphasis added).

Simply because Congress acts pursuant to an Article I power—here the Bankruptcy Clause—does not mean that every action taken under that enumerated power is necessarily constitutional. *Id.* at 166; *see also Bond v. United States*, 131 S. Ct. 2355, 2366 (2011) ("Impermissible interference with state sovereignty is not within the enumerated powers of the National Government[.]").[7] Thus, any argument that the Tenth Amendment and the

---

[7] There is some language appearing in some Ninth Circuit cases suggesting a contrary rule. *See, e.g., United States v. Mussari*, 95 F.3d 787, 791 (9th Cir. 1996) (citing *New York* at 156). Respectfully, these statements are an oversimplification of the law, a misreading of the Court's decision in *New York* and predate *Bond*. As the Fourth Circuit explained, the Tenth Amendment inquiry is a two-step process: (1) is Congress exercising an enumerated power; and (2) if so, does the "means of regulation employed yet impermissibly infringe upon state sovereignty." *United States v. Johnson*, 114 F.3d 476, 480 (4th Cir. 1997) (citing *New York* at 159). In fact, this two-step process is precisely the analysis the Court conducted in *New York*. First, the Court expressly noted that the law at issue was within Congress's Commerce Clause power. *New York,* 505 U.S. at 159. Second, even so, the

residual sovereignty it reflects, has no role to play in a chapter 9 proceeding because chapter 9 itself is valid exercise of Congress's Bankruptcy Clause power is simply wrong.  Bluntly stated, the Tenth Amendment, and Our Federalism, does not take a back seat to Congress's Article I powers.[8]

Finally, it has been argued that, once a State authorizes its creatures to file for chapter 9, the State waives its sovereignty.  This is wrong.  *First*, States cannot waive their sovereignty.  *New York* at 182 ("the departure from the constitutional plan cannot be ratified by the 'consent' of state officials.").[9] *Second*, even if such waiver could occur, there is no reason why it should not be subject to the same standards applying to waivers of sovereign immunity, which must be "unequivocally expressed in the text of the relevant statute." *Sossamon v. Texas*, 131 S. Ct. 1651, 1658 (2011) (quotation omitted).

## CONCLUSION

For the foregoing reasons, CalPERS respectfully requests that the underlying adversary proceeding be dismissed in its entirety.

---

Court nevertheless declared the regulations unconstitutional under the Tenth Amendment and residual State sovereignty.  *Id.* at 188.

[8] Section 903 reflects Congress's recognition of this precise principle and its concern about overstepping the constitutional boundaries in chapter 9.

[9] The bankruptcy court below rejected a similar argument.  *See* ER 41 ("I put no weight on that theory.").  It also rejected the idea that the *Bekins* decision stood for anything more than that the precursor to chapter 9 was constitutional on its face, as opposed to as applied in any given situation.  *See* ER 37 (describing *Bekins* as merely holding "This law on its face makes it.").

Exhibit A Page 20

Dated:  October 31, 2013                   Respectfully Submitted,


                                           Michael J. Gearin (pro hac vice)
                                           Michael B. Lubic
                                           Michael K. Ryan (pro hac vice)
                                           K&L GATES LLP

                                    By:  /s/ *Michael B. Lubic*
                                           Michael B. Lubic
                                           Attorneys for California Public
                                           Employees' Retirement System

                                                  Exhibit A Page 21

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

The undersigned hereby certifies that:

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,494 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and,

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Office Word in Times New Roman.

Dated:  October 31, 2013                              Respectfully Submitted,


                                                     Michael J. Gearin (pro hac vice)
                                                     Michael B. Lubic
                                                     Michael K. Ryan (pro hac vice)
                                                     K&L GATES LLP

                                     By:  /s/ *Michael B. Lubic*
                                                     Michael B. Lubic
                                                     Attorneys for California Public
                                                     Employees' Retirement System

1

Exhibit A Page 22