UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Priority | ___ |
| Send | ___ |
| Enter | ___ |
| Closed | ___ |
| JS-5/JS-6 | X |
| Scan Only | ___ |

**CASE NO.:** ED CV 13-01797 SJO
6:13-AP-01127-MJ
6:12-BK-28006-MJ

**DATE:** June 4, 2014

**TITLE:** <u>In re: City of San Bernardino</u>

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                              Not Present
Courtroom Clerk                               Court Reporter

**COUNSEL PRESENT FOR APPELLANT:**           **COUNSEL PRESENT FOR APPELLEE:**

Not Present                                   Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER REVERSING BANKRUPTCY COURT'S ORDER DENYING APPELLANTS IMMUNITY UNDER THE ELEVENTH AMENDMENT**

This matter is before the Court on the appeal by Appellants John Chiang, in his official capacity as State Controller of the State of California ("Controller"); the Office of the State Controller of California ("SCO"); the California Department of Finance ("DOF"); and Michael Cohen, in his official capacity as Director of DOF ("Director of Finance") (collectively, "Appellants" or "State Agencies") of the United States Bankruptcy Court for the Central District of California's (the "Bankruptcy Court") order denying Appellants immunity from suit under the Tenth and Eleventh Amendments ("Order") in case number BK 13-01127. Appellants filed their opening brief ("Brief") on October 24, 2013. Debtor-Appellee City of San Bernardino ("Appellee" or the "City") filed a brief in opposition ("Opposition") on November 7, 2013, and Appellants replied ("Reply") on November 21, 2013. For the following reasons, the Court **REVERSES** the Bankruptcy Court's Order denying Appellants immunity under the Eleventh Amendment.

I.      <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

On August 1, 2012, the City filed for Chapter 9 municipal bankruptcy in the Central District of California. *See* Chapter 9 Voluntary Petition, *In re City of San Bernardino*, No. 6:12-BK-28006-MJ (Bankr. C.D. Cal. Aug. 1, 2012), ECF No. 1. This appeal stems from accompanying adversary proceedings in which the City seeks to prevent the State of California ("State") from withholding certain tax revenues from the City and agencies related to the City.

Following World War II, the California legislature "authorized the formation of community redevelopment agencies in order to remediate urban decay." *Cal. Redev. Ass'n. v. Matosantos*, 53 Cal. 4th 231, 245 (2011). To do this, redevelopment agencies ("RDAs") could "acquire real property, including by the power of eminent domain, dispose of property by lease or sale without public bidding, clear land and construct infrastructure necessary for building on project sites, and

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** ED CV 13-01797 SJO<br>6:13-AP-01127-MJ<br>6:12-BK-28006-MJ | **DATE:** June 4, 2014 |

undertake certain improvements to other public facilities in the project area." *Id.* at 246 (citations omitted). RDAs were funded by "tax increment financing," where the RDAs received the increase in property tax revenue created by the increased value of a redevelopment project area. *Id.* "[T]ax increment financing . . . has sometimes been misused to subsidize a city's economic development through the diversion of property tax revenues from other taxing entities" such as school districts, a practice that intensified following the constriction in local tax revenue after the passage of Proposition 13. *Id.* at 247-48 (citations omitted). In 2011, RDAs received twelve percent of California's property tax revenue. *Id.* at 247.

In the summer of 2011, in response to the State fiscal emergency, *id.* at 250, the California legislature enacted Assembly Bill x1 26 ("AB 26") dissolving all RDAs and creating "successor agencies" to wind down the affairs of the former RDAs (First Am. Compl. ("FAC") ¶ 15, Appellants' Excerpts of R. ("ER") 412-13, ECF Nos. 8-10). In June 2012, the State enacted AB 1484 to provide additional rules governing the dissolution of RDAs. (FAC ¶ 18, ER 413.) Under these rules, successor agencies are required to remit unencumbered balances of redevelopment agency funds to the county auditor-controller for distribution. Cal. Health & Safety Code § 34177(d). If a successor agency fails to do so, DOF "may order an offset to the distribution provided to the sales and use tax revenue to that agency," or alternatively, "the county auditor-controller may reduce the property tax allocations of the city, county, or city and county that created the former redevelopment agency." *Id.* § 34179.6(h)(1)(C). "Alternatively or in addition . . . [DOF] may direct the county auditor-controller to deduct the unpaid amount from future allocations of property tax to the successor agency." *Id.* § 34179.6(h)(2).

On January 9, 2012, pursuant to state law, the City formed a successor agency ("Successor Agency") to the City's redevelopment agency. (FAC ¶ 17, ER 413.) On February 15, 2013, and February 21, 2013, DOF ordered the Successor Agency to remit $15,208,591 of allegedly improper transfers to the county auditor-controller. (FAC ¶¶ 25, 29, ER 414-15; *see also* Br. 7-8, ECF No. 7.) The City claims that no such transfers took place and that DOF misunderstood the City's accounting documents. (FAC ¶ 27, ER 415; *see also* Opp'n 23, ECF No. 15.) Because the Successor Agency failed to remit the disputed funds to DOF, on March 4, 2014, DOF issued a letter requiring the Successor Agency to remit the entire amount or apply for an installment payment plan. (FAC ¶ 30 & Ex. 1, ER 415, 427-28.) Furthermore, DOF warned the Successor Agency that failure to pay this money could result in tax revenue withholdings from the Successor Agency or the City. (FAC ¶ 30 & Ex. 1, ER 415, 427-28.) Specifically, the letter stated that:

> [F]ailure to remit the ordered sum within five business days of [DOF]'s meet-and-confer decision may result in one or more of the following:
>
> • Sales and Use Tax Withholding: For those situations where the amount to be remitted has previously been transferred to the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** ED CV 13-01797 SJO<br>6:13-AP-01127-MJ<br>6:12-BK-28006-MJ | **DATE:** June 4, 2014 |

> city, [DOF] is expecting to request the Board of Equalization to withhold an equivalent amount of sales and use tax distribution from the city that created the former redevelopment agency (RDA). Such withholding would likely occur in May.
> - Property Tax Withholding from Successor Agency: [DOF] is expecting to direct the withholding by the county auditor-controller of an equivalent amount of property tax out of the RPTTF from the Successor Agency. If the withholding of property tax revenue from the Successor Agency is ordered, the withholding will take effect with the June 2013 Redevelopment Property Tax Trust Fund allocation.
> - County Auditor Controller Remedy: Based on a successor's particular circumstances, [DOF] may not seek the remedies described previously. However, the county auditor-controller may decide, at his or her own discretion pursuant to HSC section 34179.6(h), to reduce the property tax allocations to the Successor Agency or the local agency that currently possesses the sums in question.

(FAC Ex. 1, ER 427-28 (emphasis omitted).) This letter prompted the City to initiate adversary proceedings against the State Agencies on March 26, 2013. (*See generally* Compl., ER 625-55; Mot. for Order Enforcing Automatic Stay, ER 601-24.) On May 9, 2014, the State Agencies moved to dismiss the City's Complaint and filed an opposition to the City's motion to enforce the automatic stay. (*See generally* Mot. to Dismiss Compl., ER 511-41; Opp'n to Mot. for Order Enforcing Automatic Stay, ER 485-510.) On May 23, 2013, the City filed an amended complaint seeking injunctive and declaratory relief and enforcement of the automatic stay such that the State would be prevented from withholding the disputed tax revenues from the City and the Successor Agency. (*See generally* FAC, ER 409-39.) Specifically, the City sought: (1) declaratory relief as to the scope and application of the automatic stay under 11 U.S.C. §§ 362 and 922 with respect to the State Agencies' threats to withhold disputed tax revenues from the City and the Successor Agency; (2) an injunction under 11 U.S.C. § 105(a) enjoining the State Agencies from withholding disputed taxes from the City and the Successor Agency; (3) a declaration that the allegedly improper transfers made by the Successor Agency did not take place; and (4) an injunction under Federal Rule of Civil Procedure 65 staying the State Agencies from withholding disputed taxes from the City and the Successor Agency. (FAC ¶¶ 38-68, ER 418-24.)

On June 6, 2013, the State Agencies filed a motion to dismiss the FAC, arguing that (1) the City's claims against the State Agencies are barred under the Tenth and Eleventh Amendments; (2) principles of comity and deference to the State's sovereign interests warrant abstention; (3) the FAC fails to state a claim because the City does not have a property interest in the tax revenue;

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** ED CV 13-01797 SJO<br>6:13-AP-01127-MJ<br>6:12-BK-28006-MJ | **DATE:** June 4, 2014 |

and (4) at a minimum, certain claims related to the Successor Agency must be dismissed for lack of subject matter jurisdiction and because the City does not have standing to sue on the Successor Agency's behalf. (*See generally* Mot. to Dismiss FAC, ER 366-97.) Simultaneously, the State Agencies filed a supplemental brief opposing the City's motion for an order to enforce the automatic stay. (*See generally* Suppl. Br. in Opp'n to Mot. for Order Enforcing Automatic Stay, ER 398-408.)

On August 22, 2013, the Bankruptcy Court held a detailed hearing on the State Agencies' Motion to Dismiss the FAC and the City's motion for an order to enforce the automatic stay. (*See generally* Hearing Tr., ER 23-91.) At the hearing, the Bankruptcy Court began by stating that "there is nothing in the March 4th letter that indicates the City, my debtor, will not get the funds that are due to it." (Hearing Tr. 10, ER 33.) Furthermore, the Bankruptcy Court held that "as a matter of law . . . the City is not the [S]uccessor [A]gency . . . and the [S]uccessor [A]gency is not the City." (Hearing Tr. 12, ER 35.) Because in the FAC, "the City ha[d] mixed [the Successor Agency and the City] together in some sort of dual capacity," the Bankruptcy Court stated its intent to dismiss the FAC. (Hearing Tr. 12-13, ER 35-36.)

The Bankruptcy Court then explained that it planned to dismiss the FAC with leave to amend, rather than without leave to amend, because it believed that the City could show that it would be damaged if the State Agencies withheld tax revenue from the Successor Agency, so the City could possibly achieve injunctive relief. (Hearing Tr. 15-16, ER 38-39.) Furthermore, the Bankruptcy Court stated this is a "collection case" or a "prepetition claim against the City or its [S]uccessor [A]gency by [Appellants], and they should be treated like every other creditor of the debtor." (Hearing Tr. 15, ER 38.) The Bankruptcy Court then reasoned that allowing the case to go forward would not "interfer[e] with the administration and implementation of the California tax system" or "prevent the State from controlling a political subdivision," but rather would "merely prevent[] the State from collecting on a claim." (Hearing Tr. 16, ER 39.) As for the claim, the Bankruptcy Court stated that it would abstain from deciding whether the State Agencies had a claim against the City or the Successor Agency, as this was best handled in state courts. (Hearing Tr. 17, ER 40.) For these reasons, the Bankruptcy Court rejected Appellants' argument that the proceedings should be dismissed under the Tenth Amendment. (Hearing Tr. 18, ER 41.)

The Bankruptcy Court then considered and rejected Appellants' Eleventh Amendment argument because it held that two Supreme Court cases, *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356 (2006) and *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440 (2004), stood for the proposition that in bankruptcy cases "where the [res] might be affected," there is no state sovereign immunity. (Hearing Tr. 19, ER 42.) Because withholding tax revenue from the Successor Agency could impact the res, the Bankruptcy Court found the State Agencies not immune under the Eleventh Amendment. (Hearing Tr. 19, ER 42.) The Court further held that even if the Eleventh

CASE NO.: **ED CV 13-01797 SJO**  **6:13-AP-01127-MJ**  **6:12-BK-28006-MJ**                DATE: **June 4, 2014**

Amendment did not allow the case to go forward, the City could seek injunctive relief from individual state officers under the *Ex parte Young* doctrine. (Hearing Tr. 20, ER 43.)

The Bankruptcy Court next considered whether the City had any property interest in the taxes, which the Bankruptcy Court suggested implicated the City's "case in controversy, Article 3 standing" requirements. (Hearing Tr. 21, ER 44.) The Bankruptcy Court based its analysis on the Ninth Circuit's definition of property, which includes "any contingent interest in property, no matter how remote[,] held by the debtor on the petition date." (Hearing Tr. 21, ER 44.) The Bankruptcy Court at first stated that it thinks "the City has something to protect in the property interest" (Hearing Tr. 22, ER 45), but later stated that it would look at the issue in more detail in the future (Hearing Tr. 55, ER 78).

The Bankruptcy Court then considered whether it had subject matter jurisdiction over the State Agencies' threats to withhold tax revenues from the Successor Agency. Recognizing that "the City can't sue for the [S]uccessor [A]gency," the Bankruptcy Court found that the City "is suing for the City" and its "ability to reorganize," and that it could perhaps "demonstrate that its reorganization efforts are factually and legally impacted by the State withholding or netting out the tax revenues." (Hearing Tr. 22-24, ER 45-47.) Then, the Bankruptcy Court stated that it would abstain from deciding the City's third claim seeking a declaration that the allegedly improper transfers made by the Successor Agency did not take place. (Hearing Tr. 24-25, ER 47-48.) Finally, the Bankruptcy Court considered and rejected the City's motion for an order to enforce the automatic stay. (Hearing Tr. 26-35, ER 49-58.)

Following the hearing, the Bankruptcy Court issued a final order granting Appellants' motion to dismiss the FAC without prejudice with the exception of the City's third claim for relief, which the Bankruptcy Court dismissed without leave to amend. (Order, ER 18-20.) The Bankruptcy Court also denied without prejudice the City's motion for an order to enforce the automatic stay. (Order, ER 20.)

II.     DISCUSSION

Appellants challenge the Bankruptcy Court's Order denying them immunity under the Tenth and Eleventh Amendments to the United States Constitution. While the Bankruptcy Court has not yet issued a final judgment in this case, denials of state sovereign immunity are immediately appealable under the collateral order doctrine. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993); *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193 (9th Cir. 2005).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** ED CV 13-01797 SJO<br>6:13-AP-01127-MJ<br>6:12-BK-28006-MJ | **DATE:** June 4, 2014 |

Thus, the Court has jurisdiction over Appellants' claims under the Eleventh Amendment.[1]  "The bankruptcy court's conclusions of law and interpretation of the Bankruptcy Code are reviewed de novo and its factual findings for clear error."  *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009).  "The existence of sovereign immunity is a question of law reviewed de novo."  *Del Campo v. Kennedy*, 517 F.3d 1070, 1075 (9th Cir. 2008).

In addition to the Eleventh Amendment issue, this appeal raises several jurisdictional issues.  Before reaching the subject of sovereign immunity, the Court must first consider threshold jurisdictional questions.  *See Pegasus*, 394 F.3d at 1193 ("[W]e consider the existence of subject matter jurisdiction before determining the sovereign immunity issue."); *see also Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998) ("While the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power, and therefore can be raised at any stage of the proceedings, we have recognized that it is not coextensive with the limitations on judicial power in Article III.").

    A.    <u>Jurisdiction</u>

        1.    <u>Mootness</u>

Appellee argues that this appeal is moot because Appellants seek review of an order dismissing the FAC, which has since been superseded by Appellee's submission of a Second Amended Complaint.  (Opp'n 1.)  The jurisdiction of federal courts is limited to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  For a case or controversy to exist, the issue presented in the case must not be moot.  *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000).  "A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  *Id.* (alteration and internal quotation marks omitted).  "If an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed."  *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997).  Moreover, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997).

Here, the City's filing of a Second Amended Complaint does not prevent the Court from granting effective relief to Appellants.  The sovereign immunity arguments raised by Appellants with respect

---

[1]  Neither the Supreme Court nor the Ninth Circuit has extended the collateral order doctrine to appeals of denials of a state's Tenth Amendment immunity.  Because this Court finds that Appellants have immunity on their live claims under the Eleventh Amendment, it is not necessary for the Court to consider whether it also has jurisdiction to hear Appellants' Tenth Amendment argument.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| CASE NO.: **ED CV 13-01797 SJO**<br>**6:13-AP-01127-MJ**<br>**6:12-BK-28006-MJ** | DATE: **June 4, 2014** |

to the FAC are identical to those that the State Agencies would raise against the Second Amended Complaint. An order finding the State Agencies immune under the Eleventh Amendment, and thus dismissing the FAC without leave to amend, would prevent the adversary proceeding from moving forward against the State Agencies. In staying all proceedings with respect to the Second Amended Complaint pending this appeal, Order Granting Mot. to Stay Proceedings Pending Appeal, *City of San Bernardino v. California*, No. 6:13-ap-01127-MJ (Bankr. C.D. Cal. Oct. 17, 2013), ECF No. 119, the Bankruptcy Court implicitly recognized the impact this Court's order could have on the SAC.

The situation differs from that in *Liberi v. Defend Our Freedoms Founds., Inc.*, where the appellants appealed the denial of an anti-SLAPP motion to strike an original complaint that was then superceded by the filing of an amended complaint. 509 F. App'x 595, 596 (9th Cir. 2013). In *Liberi*, striking the original complaint "would not grant any meaningful form of relief," because "it would not alter the proceedings in the district court, as the parties would continue to litigate the merits of the claims contained in the now-operative [amended complaint]." *Id.* Here, the parties have ceased litigating the merits of the claims contained in the SAC as they await this Court's decision, and an order finding the State Agencies immune would drastically alter the proceedings in the Bankruptcy Court, as it would lead to the dismissal of the SAC.

Judicial efficiency is a factor, also. Dismissing the instant appeal and remanding the action would only result in the State Agencies again moving to dismiss the operative complaint—this time the SAC—on sovereign immunity grounds, the Bankruptcy Court again denying the State Agencies' motion, and the State Agencies again appealing to the District Court. These inefficiencies cannot be overlooked. The Court thus rejects Appellee's mootness argument.

      2.      <u>Jurisdiction of Bankruptcy Court</u>

The second jurisdictional hurdle facing the Court is Appellants' suggestion in its Reply that the Court has no jurisdiction over the proceedings. (Reply 11 n.7, ECF No. 19.) Appellants claim that this provides an "independent basis for reversal of the Bankruptcy Court's" order granting the City leave to file an amended complaint. (Reply 11 n.7.)

District courts have "original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. "The district court, in turn, may refer [these cases and proceedings] to the bankruptcy court." *In re Marshall*, 600 F.3d 1037, 1052-53 (9th Cir. 2010) (quoting 28 U.S.C. §157(a)) (internal quotation marks omitted). Here, the City seeks to prevent the State Agencies from withholding disputed tax revenues from both the City and the Successor Agency. The State Agencies do not argue that the Court lacks jurisdiction over the State Agencies' alleged threats to withhold disputed tax revenues from the City directly. Instead, the

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** **ED CV 13-01797 SJO** **6:13-AP-01127-MJ** **6:12-BK-28006-MJ** | **DATE:** June 4, 2014 |

State Agencies claim to have "no present intention of withholding tax revenue from the debtor — the only party over which the Bankruptcy Court has jurisdiction." (Reply 11 n.7.) At the hearing, the Bankruptcy Court agreed that "there is nothing in the March 4th letter that indicates the City . . . will not get the funds that are due to it." (Hearing Tr. 9-10, ER 32-33.)

The Court agrees. On March 4, 2013, DOF sent the Successor Agency a letter stating that it must remit the disputed funds or apply for an installment payment plan. (FAC ¶ 30 & Ex. 1, ER 415, 427-28.) This letter outlined the repercussions should the Successor Agency fail to remit these funds. Two scenarios could result in the withholding of tax revenue from the City. First, if "the amount to be remitted ha[d] previously been transferred to the [C]ity," the DOF stated that it would "withhold an equivalent amount of sales and use tax distribution from the [C]ity that created the former redevelopment agency (RDA)." (FAC Ex. 1, ER 427.) Alternatively, the DOF stated in the letter that it could "reduce the property tax allocations to . . . the local agency that currently possesses the sums in question." (FAC Ex. 1, ER 428.) If the City possessed the sums in question, it could qualify as the "local agency" threatened with a reduction in property tax allocations. (*See* FAC Ex. 1, ER 428.) In both of these scenarios, the withholding of tax revenue from the City is triggered only if the disputed funds had either "previously been transferred to the [C]ity" or are "currently possesse[d]" by the City. (FAC Ex. 1, ER 427-28.) With nothing to indicate that the City possesses or did possess the disputed funds, the Court agrees with the Bankruptcy Court that the State Agencies have not threatened to withhold tax revenues from the City. Because the City faces no immediate threat to its coffers, the State Agencies argue that this allegation alone cannot support the Bankruptcy Court's jurisdiction.

However, this is not the City's only basis for jurisdiction. The City also seeks to prevent the State Agencies from withholding tax revenue from the Successor Agency. In response, the State Agencies argue that the Court lacks jurisdiction over any action against the non-debtor Successor Agency. (Reply 11 n.7.) That the Successor Agency is not a debtor does not necessarily deprive the Court of jurisdiction under the Bankruptcy Code, as the Court's jurisdiction is not limited to actions involving the debtor, but also extends in certain situations to actions involving third parties. Under § 1334(b), courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Of these, "the set of cases 'related to' a bankruptcy case is 'much broader' than the set of 'arising under' cases." *In re Ray*, 624 F.3d 1124, 1133 (9th Cir. 2010) (quoting *Pegasus*, 394 F.3d at 1193-94). Thus, the Court begins by examining whether it had "related to" jurisdiction over an action to prevent the State Agencies from withholding tax revenue from the Successor Agency.[2]

---

[2] Because the City seeks enforcement of the automatic stay and other remedies outlined in the Bankruptcy Code, the Court may also have "arising in" jurisdiction, where the civil proceeding "would have no existence outside of a bankruptcy case." *Ray*, 624 F.3d at

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** ED CV 13-01797 SJO<br>6:13-AP-01127-MJ<br>6:12-BK-28006-MJ | **DATE:** June 4, 2014 |

"A bankruptcy court's 'related to' jurisdiction is very broad, including nearly every matter directly or indirectly related to the bankruptcy." *In re Sasson*, 424 F.3d 864, 868 (9th Cir. 2005) (quotation marks omitted). To determine the existence of "related to" jurisdiction, the Ninth Circuit applies the test first articulated in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984), which asks "whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988) (quoting *Pacor*, 743 F.2d at 994) (emphasis omitted); *Pegasus*, 394 F.3d at 1193. "Thus, the proceeding need not necessarily be against the debtor or against the debtor's property." *Pacor*, 743 F.2d at 994.

In this case, the Bankruptcy Court found that it was difficult to discern the exact nature of the relationship between the City and the Successor Agency because the City had "commingled itself" with the Successor Agency in the FAC. (Hearing Tr. 13, ER 36). Nonetheless, at the hearing, the Bankruptcy Court stated that it was possible the City could show that it would be damaged if the Successor Agency were deprived of funds (Hearing Tr. 15, ER 38), so it dismissed the FAC with leave for the City to amend to clarify its relationship with the Successor Agency (Hearing Tr. 13, ER 36). The Court sees no reason to overrule the Bankruptcy Court's decision on jurisdictional grounds, as a showing by the City that the State Agencies' withholding of tax revenue from the Successor Agency would conceivably impact the administration of the City's bankruptcy would grant this Court jurisdiction over these proceedings.

The State Agencies nonetheless appear to argue that this action cannot be "related to" the bankruptcy under *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n.5 (1995). (*See* State Def.'s Opp'n to Br. Amici Curiae of the POB Creditors 9, ER 196.) In *Celotex*, the Supreme Court stated that "[p]roceedings 'related to' the bankruptcy include (1) causes of action owned by the debtor which become property of the estate . . . and (2) suits between third parties which have an effect on the bankruptcy estate." 514 U.S. at 307 n.5. The Successor Agency is not a named party in the instant action and the action does not involve an independent court proceeding between the State Agencies and the Successor Agency, so this action does not fit squarely within one of these categories. However, nothing in *Celotex* indicates the Supreme Court intended such a narrow reading of these two categories, nor have the State Agencies cited other precedent supporting this interpretation. Furthermore, the test described in *Pacor* places no such restriction on the types of proceedings over which the court may have "related to" jurisdiction. The Congressional record also supports extending jurisdiction over this action, as it states that the term "proceeding" is meant to be used "in its broadest sense" and is "not intended to confine the bankruptcy case."

---

1133 (quoting *In re Harris*, 590 F.3d 730, 737 (9th Cir. 2009)). For the purposes of this appeal, it is not necessary to distinguish between "arising in" and "related to" jurisdiction, so it is sufficient for the Court to find these proceedings are "related to" a case under title 11.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** **ED CV 13-01797 SJO** **6:13-AP-01127-MJ** **6:12-BK-28006-MJ** | **DATE:** **June 4, 2014** |

H.R. Rep. No. 595, at 445 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6401.  Thus, because the instant proceeding could impact the administration of the City's bankruptcy, it is sufficient to confer jurisdiction on the Court.

      3.      <u>Standing</u>

Because, as discussed in the previous section, the Court finds that the State Agencies have not seriously threatened to withhold taxes from the City directly, the Court next considers whether the City has standing to raise its claims against the State Agencies.  For a case to satisfy a federal court's case-or-controversy requirement, Article III, Section 2 of the Constitution requires an "irreducible" minimum of standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Three elements must be satisfied for a plaintiff to have standing under Article III:  "(1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision."  *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008) (citing *Lujan*, 504 U.S. at 560-61).

"In the particular context of injunctive and declaratory relief, a plaintiff must show that he has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'"  *Canatella v. California*, 304 F.3d 843, 852 (9th Cir. 2002) (quoting *Lujan,* 504 U.S. at 560; *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  The harm must be "actual or imminent, not conjectural or hypothetical," *Lujan*, 504 U.S. at 560 (quotation marks omitted), but "one does not have to await the consummation of threatened injury to obtain preventive relief." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) (citations omitted).

Here, as discussed, the City seeks to prevent the State Agencies from withholding disputed tax revenues from both the debtor City and the third-party non-debtor Successor Agency.  The first allegation concerns the withholding of tax revenues from the City.  The Bankruptcy Court has found, and this Court agrees, that with the information currently before the Court, these threats are not credible, and therefore the City cannot show it is threatened with imminent harm.  Moreover, there is nothing to indicate that the City will be able to amend its FAC to allege that the State Agencies actually threatened to withhold tax revenues from the City.  The threats against the City described in the FAC are limited to situations where the disputed funds had either "previously been transferred to the [C]ity" or are "currently possesse[d]" by the City. (FAC Ex. 1, ER 427-28.)  Nothing suggests that the City possesses or did possess the disputed funds.  To the contrary, the City argues that these funds do not exist at all.  (Opp'n 23.)  Because the City cannot amend its FAC to show that the State Agencies' threats to withhold tax revenue from the City are credible, granting the City leave to amend the FAC on this issue would be futile.  The City does not have standing to pursue relief on these grounds.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** ED CV 13-01797 SJO<br>6:13-AP-01127-MJ<br>6:12-BK-28006-MJ | **DATE:** June 4, 2014 |

However, the same reasoning does not apply to the State Agencies' threats against the Successor Agency. In the March 4, 2013 letter to the Successor Agency, DOF stated that the withholding of property taxes would take place in June 2013. (FAC Ex. 1, ER 427.) Moreover, in the FAC the City described the impact that this withholding would have on its resources. (FAC ¶ 49, ER 420.) Because of the "significant overlap between Successor Agency and City officers and personnel; the fact that the City would be forced to undertake legal representation of the Successor Agency . . . ; and the deprivation of the Successor Agency of operating capital, which would shift its functions to the City or prevent their performance altogether," the City asserts that this withholding will undermine its "efforts to adjust its debts and emerge from bankruptcy." (FAC ¶ 49, ER 420.) Thus, were the State Agencies allowed to follow through on their threat against the Successor Agency, the City has shown that it would suffer a "concrete and particularized" injury. *Gutierrez*, 545 F.3d at 1225. This injury is traceable to the State Agencies' conduct, and if the City succeeds in obtaining an injunction, it would redress this injury. With respect to the treats against the Successor Agency, the City has demonstrated the three elements of Article III standing.

        4.      <u>Property Interest in the Withheld Tax Revenue</u>

Finally, the Court considers Appellants' argument in their Motion to Dismiss that the City and the Successor Agency had no property interest in the withheld tax revenue. (Mot. to Dismiss FAC 21-22, ER 392-93; *see also* Reply 6-8.) Were that true, the Bankruptcy Court reasoned that there would be "no case in controversy, Article 3 standing." (Hearing Tr. 21, ER 44.) While the Bankruptcy Court stated that it "think[s] the City has something to protect in the property interest" (Hearing Tr. 22, ER 45), it also concluded the hearing without making a final ruling on the matter (Hearing Tr. 55, ER 78). To the extent the existence of the City's property interest implicates the case or controversy requirement or the Article III standing requirement, the Court must consider it before the Eleventh Amendment question. *See Pegasus*, 394 F.3d at 1193; *Calderon*, 523 U.S. at 745 n.2. However, courts have not typically treated this issue as a jurisdictional issue, and instead analyzed it on the merits. *See, e.g.*, *In re Spaulding Composites Co.*, 207 B.R. 899, 906 (B.A.P. 9th Cir. 1997); *In re La. World Exposition, Inc.*, 832 F.2d 1391, 1398 (5th Cir. 1987). Thus, because in the Ninth Circuit, "precedent dictates that we resolve an Eleventh Amendment immunity claim before reaching the merits," *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1133 (9th Cir. 2012); *see also Cardenas v. Anzai*, 311 F.3d 929, 940 n.2 (9th Cir. 2002) ("[W]e will confront the parties' Eleventh Amendment arguments as a threshold issue."), the Court will first determine whether the State Agencies are immune from suit under the Eleventh Amendment.

/ / /

/ / /

      B.      <u>Sovereign Immunity</u>

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** **ED CV 13-01797 SJO**<br>**6:13-AP-01127-MJ**<br>**6:12-BK-28006-MJ** | **DATE:** **June 4, 2014** |

The City seeks to enjoin the State Agencies from withholding tax revenue from the Successor Agency and the City—an injunction that the State Agencies claim would effectively compel the State to disburse $15 million to municipal entities and require the federal courts to rule on the State's "management of its internal affairs and administration of its taxation scheme." (Br. 14.) Thus, the State argues that it is immune from suit under the Eleventh Amendment. The City argues (Opp'n 3-11), and the Bankruptcy Court agreed (Order 2, ER 19; Hearing Tr. 18-19, ER 41-42), that Supreme Court precedent forecloses the State Agencies' claims of Eleventh Amendment immunity.

"Dual sovereignty is a defining feature of our Nation's constitutional blueprint." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 751 (2002). "The preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities." *Id.* at 760. "[T]he States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today." *Alden v. Maine*, 527 U.S. 706, 713 (1999). Because the Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," U.S. Const. amend. XI, this sovereignty is commonly called "Eleventh Amendment immunity." *See Alden*, 527 U.S. at 713. However, this is "something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Id.*

Under this doctrine, a state is generally immune from suit by private actors unless there is valid Congressional abrogation or the state has waived its sovereign immunity and consented to the suit. *Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011); *see also Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). While the text of the Eleventh Amendment only restricts suit by "Citizens of another State, or by Citizens or Subjects of any Foreign State," U.S. Const. amend. XI, the Supreme Court has applied the principle of sovereign immunity broadly, holding states immune from suits brought by their own citizens, *Hans v. Louisiana*, 134 U.S. 1, 15 (1890), as well as by federal corporations, foreign nations, and Indian tribes, *see Alden*, 527 U.S. at 728. Other courts have also barred suits against states by municipal authorities. *See, e.g.*, *St. Charles Cnty. v. Wisconsin*, 447 F.3d 1055, 1058 (8th Cir. 2006) ("[W]hile the Eleventh Amendment does not bar suits between states, a county is a 'Citizen of another State' for Eleventh Amendment purposes."); *Kelley v. Metro. Cnty. Bd. of Educ.*, 836 F.2d 986, 988 (6th Cir. 1987) ("[I]f a state cannot be sued by its own citizens, *a fortiori* it cannot be sued by its own political subdivisions, which are creatures of the state and exist only at the state's sufferance.").

However, bankruptcy complicates the analysis of state sovereign immunity. In 2004, the Supreme Court held that "when the bankruptcy court's jurisdiction over the res is unquestioned . . . the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| CASE NO.: **ED CV 13-01797 SJO**<br>**6:13-AP-01127-MJ**<br>**6:12-BK-28006-MJ** | DATE: **June 4, 2014** |

exercise of its *in rem* jurisdiction to discharge a debt does not infringe state sovereignty."[3]  *Hood*, 541 U.S. at 448 (citations omitted).  Thus, "States, whether or not they choose to participate in the proceeding, are bound by a bankruptcy court's discharge order no less than other creditors."  *Id.*  This is because "the court's jurisdiction is premised on the debtor and his estate, and not on the creditors."  *Id.* at 447.  However, the Court noted that "[a]lthough a discharge order under the Bankruptcy Code 'operates as an injunction' against creditors who commence or continue an action against a debtor *in personam* to recover or to collect a discharged debt, the enforcement of such an injunction against the State by a federal court is not before us."  *Id.* at 448 n.4 (citation omitted).

Two years later, the Supreme Court addressed whether a bankruptcy court's exercise of its *in personam* jurisdiction infringed state sovereignty when it considered whether sovereign immunity barred a bankruptcy proceeding initiated by a bankruptcy trustee to set aside preferential transfers[4] by the debtor to state agencies.  *Katz*, 546 U.S. at 359.  The Court held that the state agencies were not barred by sovereign immunity.  In so holding, the Court relied in part on the reasoning in *Hood*, but chiefly on a historical analysis in which the Court concluded that the States had "acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts."  *Id.* at 378.  The Court based this reasoning on the Framers' acceptance of the Bankruptcy Clause.  At the time of ratification, the Framers understood that bankruptcy laws could extend to more than "simple adjudications of rights in the res," *id.* at 370, including the power to "avoid preferential transfers and to recover the transferred property" as this "has been a core aspect of the administration of bankruptcy estates since at least the 18th century," *id.* at 372.  Thus, the Court reasoned that the Framers' acceptance of the Bankruptcy Clause gave Congress "the power to subordinate state sovereignty, albeit within a limited sphere."  *Id.* at 377.

This reasoning, while broad, is not all-encompassing.  There are several crucial facts distinguishing the issues presented in *Hood* and *Katz* from the issues presented by the instant case.  The first and most obvious differences are the identities of the debtors and the types of bankruptcies.  Because of these differences, the historical analysis key to the Court's decision in *Katz* is inapposite here.  Furthermore, the link between the disputed property and the Bankruptcy Court's exercise of its *in rem* jurisdiction is much weaker here than in *Hood* and *Katz*.  Given the

---

   [3]   A discharge order "releases a debtor from personal liability with respect to any discharged debt by voiding any past or future judgments on the debt and by operating as an injunction to prohibit creditors from attempting to collect or to recover the debt."  *Hood*, 541 U.S. at 447.

   [4]   A preferential transfer is a transfer made by the debtor within ninety days before the bankruptcy is filed that is voidable by the trustee under certain conditions.  11 U.S.C. § 547.

| | |
|---|---|
| CASE NO.: **ED CV 13-01797 SJO**<br>**6:13-AP-01127-MJ**<br>**6:12-BK-28006-MJ** | DATE: **June 4, 2014** |

importance of these issues to the analysis in *Hood* and *Katz*, these distinctions suggest that the Supreme Court's holdings in *Hood* and *Katz* do not necessarily preclude the State Agencies' exercise of sovereign immunity here.

### 1. Municipal Bankruptcies

The Court begins its analysis by comparing the identity of the debtors and the resulting category of bankruptcy in *Katz*, *Hood*, and the instant action. Both *Hood* and *Katz* involved private debtors. *See Hood*, 541 U.S. at 444 (debtor is an individual); *Katz*, 546 U.S. at 360 (debtor is a corporation engaged in business with the state). Here, the City is not a private debtor, but a municipality. Congress did not pass the first municipal bankruptcy law until 1934, more than 150 years after the Bankruptcy Clause was ratified. *See Collier on Bankruptcy* ¶ 900.LH[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Because of this, the special concerns and complexities arising from the administration of a municipal bankruptcy would not have been on the mind of the Framers when they ratified the Constitution and waived the states' sovereign immunity in federal bankruptcy proceedings.

Municipal bankruptcies implicate a state's sovereignty and Tenth Amendment rights to a greater degree than other bankruptcy contexts because of the special relationship between a state and its municipalities. As a municipality, the City is a creature of state law, "created by the State to assist in the carrying out of state governmental functions." *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 362 (2009) (quoting *Reynolds v. Sims*, 377 U.S. 533, 575 (1964)). Thus, "the State may withhold, grant or withdraw powers and privileges [of a municipality] as it sees fit." *Id.* (quoting *City of Trenton v. New Jersey*, 262 U.S. 182, 187 (1923)). The City "has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator." *Id.* at 363 (quoting *Williams v. Mayor of Baltimore*, 289 U.S. 36, 40 (1933)); *see also City of Trenton*, 262 U.S. at 196.

When first considering the constitutionality of municipal bankruptcies, the Supreme Court recognized the degree to which these bankruptcies threatened state sovereign interests. The Court struck down the first federally authorized municipal bankruptcy statute as invalid because the states or their political subdivisions would be "no longer free to manage their own affairs," such that "the sovereignty of the state, so often declared necessary to the federal system, [would] not exist." *Ashton v. Cameron Cnty. Water Imp. Dist. No. 1*, 298 U.S. 513, 528 (1936). Instead, the Supreme Court held that nothing "support[s] the view that the federal government, acting under the bankruptcy clause, may impose its will and impair state powers" by passing "laws inconsistent with the idea of sovereignty." *Id.* at 531. It was only after Congress redrafted the statute so that it did not "impinge upon the sovereignty of the State" and "[t]he State retain[ed] control of its fiscal affairs" that the Supreme Court held municipal bankruptcies constitutional. *United States v. Bekins*, 304 U.S. 27, 51-52 (1938).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| CASE NO.: **ED CV 13-01797 SJO**<br>**6:13-AP-01127-MJ**<br>**6:12-BK-28006-MJ** | DATE: **June 4, 2014** |

In part as a result of this redrafting, special rules today protect the sovereignty of the state in Chapter 9 municipal bankruptcies. Chapter 9 bankruptcy laws come with the proviso that they "do[] not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality, including expenditures for such exercise." 11 U.S.C. § 903. Moreover, a bankruptcy court does not exercise exclusive control over the debtor's property in Chapter 9 bankruptcies. Rather, the court is expressly prohibited from interfering with "any of the political or governmental powers of the debtor," "any of the property or revenues of the debtor," or "the debtor's use or enjoyment of any income-producing property" without the consent of the debtor. *Id.* § 904. Thus, a municipality "can expend its property and revenues during the chapter 9 case as it wishes. It can pay any debt in full without permission from this court. If it wishes to spend $55,000 settling a lawsuit, it is entitled to do so without needing a permission from this court." *In re City of Stockton*, 486 B.R. 194, 199 (Bankr. E.D. Cal. 2013). Keeping this control in the hands of the debtor and the state prevents federal courts from impugning a state's sovereign immunity and interfering with the exercise of its Tenth Amendment powers.

Because the Framers adopted the Bankruptcy Clause at a time when only private bankruptcies were permitted, with no hint that these proceedings would one day be available to municipalities, they could not have contemplated the impact that waiving their sovereign immunity would have in that context, where the interference with state sovereignty is far greater. *Cf. Katz*, 546 U.S. at 370 ("In bankruptcy, the court's jurisdiction is premised on the debtor and his estate, and not on the creditors. As such, its exercise does not, in the usual case, interfere with state sovereignty even when State's interests are affected." (citation and quotation marks omitted)). It is true that the Framers did not subordinate state sovereign immunity merely to the bankruptcy laws in existence at the time of the ratification of the Constitution, but also to future bankruptcy laws enacted by Congress. *See Katz*, 546 U.S. at 376-77. However, given municipal bankruptcies' powerful interference with state sovereignty, their inclusion in the Bankruptcy Code was transformative. This case, with its repercussions on the State's treasury and the administration of its taxation and property management functions, demonstrates the danger that municipal bankruptcies can pose to a state's sovereignty and dignity. Allowing the City to proceed risks inviting the sort of interference with the State's control of its fiscal affairs that the Supreme Court sought to avoid when it allowed municipal bankruptcies. *Bekins*, 304 U.S. at 51-52. Blindly extending the historical analysis applied in *Katz* to the instant case would be a mistake.

/ / /

      2.      <u>Disputed Property</u>

Although the Supreme Court's historical analysis conducted in *Katz* is not applicable here, the Court's exercise of exclusive *in rem* jurisdiction over the City's property may still preclude the State

Case 5:13-cv-01797-SJO   Document 21   Filed 06/04/14   Page 16 of 18   Page ID #:1034

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: **ED CV 13-01797 SJO**               DATE: **June 4, 2014**
**6:13-AP-01127-MJ**
**6:12-BK-28006-MJ**

Agencies' exercise of their sovereign immunity. In *Hood*, the Court stressed that because a bankruptcy court's *in rem* jurisdiction was "premised on the debtor and his estate, and not on his creditors," states "are bound by a bankruptcy court's discharge order no less than other creditors."[5] *Hood*, 541 U.S. at 447-48. And the Court in *Katz* referenced this reasoning when it denied states immunity from certain ancillary orders "in furtherance of the court's *in rem* jurisdiction," even when those orders "involve *in personam* process." *Katz*, 546 U.S. at 369-72.

Here, however, the link between the debtor's property and the disputed property is far more tenuous than in *Hood* and *Katz*. In *Hood*, the debtor sought to discharge her own student loan debt, 541 U.S. at 445, while the trustee in *Katz* sought to recover funds paid by the debtor for the debtor's estate, 546 U.S. at 360. Both disputes centered on the debtors' property over which the courts exercised exclusive *in rem* jurisdiction. Here, however, the City seeks to prevent the State Agencies from withholding disputed tax revenues from both the debtor City and the third-party non-debtor Successor Agency. As the Court has already held, the Successor Agencies' threats against the City are not credible, so the City lacks standing with respect to these threats. Were the City able to demonstrate that the State Agency had threatened to withhold or had withheld tax revenues from the City itself, the Court's exclusive *in rem* jurisdiction over the property of City would likely preclude the State Agencies' immunity, as the proceedings would be "in furtherance of the court's *in rem* jurisdiction." *See Katz*, 546 U.S. at 372. Lacking standing, however, the City cannot obtain relief for these threats.

The City also claims that the State Agencies have threatened to withhold tax revenue from the Successor Agency. This disputed revenue, however, is far less closely tied to the Court's *in rem* jurisdiction. The City and the Successor Agency are not the same entity, and threats to withhold taxes from the Successor Agency do not equate to threats to withhold taxes from the City. The disputed property in this case is not, was not, and will not be the property of the City, and the Court will never have exclusive *in rem* jurisdiction over it. Thus, the link between the Court's exercise of its *in rem* jurisdiction over the City's property and the payment of disputed tax revenues

---

[5] It is true that there is no "estate" in municipal bankruptcies. (*See* Reply 6.) Nonetheless, the Court still maintains exclusive *in rem* jurisdiction over the debtor's property. *See* 28 U.S.C. § 1334(e)(1) ("The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction . . . of all the property, wherever located, of the debtor."); *see also City of Stockton*, 478 B.R. at 26 ("All City property, wherever located, as of the commencement of the case is in the exclusive jurisdiction of the United States District Court of which this bankruptcy court is a unit."). The degree of control that the municipality retains over its property, however, far exceeds that of a private debtor. 11 U.S.C. § 904.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| CASE NO.: | ED CV 13-01797 SJO<br>6:13-AP-01127-MJ<br>6:12-BK-28006-MJ | DATE: | June 4, 2014 |

to the Successor Agency is far weaker than the corresponding links between the court's *in rem* jurisdiction and the sought-after remedies in *Hood* and *Katz.*

With neither historical acquiescence nor any past, present, or future *in rem* jurisdiction over the disputed tax revenues, the twin justifications of *Hood* and *Katz* do not apply here. Proceeding forward would insert the Bankruptcy Court into a dispute between a state and a non-debtor municipal agency, even though the State Agencies' actions have no direct tie to the debtor's property and the Court does not and never will have *in rem* jurisdiction over the disputed property. The City's argument that granting the State Agencies' immunity would allow the State to protect municipal resources from other creditors, then "help itself to those same assets," is misplaced where, as here, the withheld tax revenue would never be part of the City's property and thus would never be distributed to creditors. (*See* Opp'n 25.) The State Agencies are not helping themselves to the "same assets" as those protected from other creditors, because the disputed assets are not in in the Bankruptcy Court's *in rem* jurisdiction. The Court thus holds that, in the absence of binding precedent stripping the State of its sovereign immunity, Appellants may invoke their sovereign immunity in response to the City's allegations concerning the withholding of disputed tax revenues from the Successor Agency.

    C.    <u>Ex parte Young</u>

After holding that the State Agencies were not protected by sovereign immunity, the Bankruptcy Court reasoned that, even if this holding was incorrect, the case could likely go forward against the individually named defendants under the *Ex parte Young* doctrine. (Hearing Tr. 20, ER 43.) In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court fashioned an exception to sovereign immunity under which, "when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Stewart*, 131 S. Ct. at 1638. Under this doctrine, the state official enforcing the unconstitutional law may be haled into federal court without the benefit of sovereign immunity.

The City argues that the State Agencies sought to withhold tax revenue in violation of the automatic stay protecting the City's assets. "[T]he automatic stay of section 362(a) protects only the debtor, property of the debtor or property of the estate. It does not protect non-debtor parties or their property." *In re Chugach Forest Prods., Inc.*, 23 F.3d 241, 246 (9th Cir. 1994) (quotations and internal alterations omitted). The City lacks standing with respect to the State Agencies' alleged threats to withhold tax revenues from the City directly. Furthermore, because the automatic stay does not protect the property of the Successor Agency, the State Agencies cannot

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** ED CV 13-01797 SJO<br>6:13-AP-01127-MJ<br>6:12-BK-28006-MJ | **DATE:** June 4, 2014 |

violate any federal law by withholding tax revenue from the Successor Agency.[6]  Thus, the *Ex parte Young* exception does not apply in this case.

III.   RULING

For the foregoing reasons, the Court finds that the Bankruptcy Court was in error in denying Appellants Eleventh Amendment immunity.  Therefore, the Bankruptcy Court's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this Order.

IT IS SO ORDERED.

---

[6]   The City also seeks an injunction under 11 U.S.C. § 105 that would prevent the State Agencies from withholding tax revenues from the Successor Agency, but this remedy sounds in equity, not in the alleged violation of any federal law.